UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GERALD GREEN,<br><br>            *Plaintiff,*<br><br>    v.<br><br>CAPITAL ONE, N.A.; and<br>SQUARE, INC.,<br><br>            *Defendants* | Civil Action No.: 20-cv-4655<br><br>**FIRST AMENDED COMPLAINT** |

Gerald Green, Plaintiff herein, by his attorneys, alleges and complains of Defendants Capital One, N.A. and Square, Inc. as follows:

## PRELIMINARY STATEMENT

1. Gerald Green ("Plaintiff" or "Mr. Green") is a victim of identity theft.

2. The perpetrator, who is unknown to Plaintiff, unlawfully transferred funds from Plaintiff's bank account with Capital One, N.A. to unknown accounts.

3. Plaintiff promptly and repeatedly disputed the charges with Defendants Capital One, N.A.; and Square, Inc. (collectively, "Defendants").

4. Despite their obligation under the EFTA to promptly credit Plaintiff's account in full, Defendants have refused to credit Plaintiff's account for the stolen funds.

5. Plaintiff brings claims against Defendants for violations of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693, *et seq.*, and New York General Business Law § 349 ("NYGBL § 349").

## JURISDICTION AND VENUE

6. The Court has jurisdiction pursuant to 15 U.S.C. § 1693m and 28 U.S.C. § 1331. Supplemental jurisdiction exists for the state law claim pursuant to 28 U.S.C. § 1367.

7. Jurisdiction over Plaintiff's claim for declaratory relief is conferred by 28 U.S.C. § 2201.

8. Venue is proper in this District because Plaintiff resides in this District, a substantial part of the events and occurrences underlying this litigation occurred within this District, and Defendants regularly conduct business here.

## PARTIES

9. Plaintiff Gerald Green is a natural person and citizen of New York residing in Bronx County, New York.

10. Mr. Green is a veteran of the United States, formerly serving in the United States Army from September 24, 1982 and honorably discharged with the rank of E3 on September 23, 1985.

11. Plaintiff is a "consumer" as defined by the EFTA, 15 U.S.C. § 1693a(6).

12. At all times relevant, Plaintiff's checking and savings accounts with Defendant Capital One, N.A. were used for personal, family, or household purposes.

13. Defendant Capital One, N.A. is a national banking association formed under the laws of the United States and was, at all times relevant to this Complaint, a financial institution as defined by the EFTA, 15 U.S.C. § 1693a(9).

14. Defendant Square, Inc. is a Delaware corporation duly registered to do business in New York and was, at all times relevant to this Complaint, a financial institution as defined by the EFTA, 15 U.S.C. § 1693a(9).

15. Square, Inc. developed and operates the mobile application *Cash App*, a mobile payment service.

## FACTS

16. On or about June 19, 2019, Mr. Green sought to electronically transfer several hundred dollars from his bank account with Defendant Capital One, N.A. to his long-time friend and fellow veteran, Edward Butler.

17. In order to facilitate this transfer of funds, Mr. Green used Square, Inc.'s mobile application *Cash App*.

18. Mr. Green initiated a single transaction using *Cash App* to send funds to Mr. Butler.

19. Mr. Butler was notified on his mobile telephone that he had received the money, but he was unable to retrieve the funds using the *Cash App*.

20. Upon information and belief, the initial transaction initiated by Mr. Green to transfer funds to Mr. Butler failed and was never effectuated.

21. The funds were never transferred from Mr. Green's account to Mr. Butler, nor were the funds ever received by Mr. Butler.

22. Thus, the first and only transaction Mr. Green initiated using *Cash App* failed to transfer funds to Mr. Butler.

23. Subsequently, Mr. Butler went online to find out how to access the funds that were supposed to be available in his account and was led to a telephone number that was purportedly for *Cash App* customer support.

24. After joining Mr. Green on the line, Mr. Butler initiated a telephone call to the number he believed was for *Cash App* and the two spoke to a male individual who identified himself as a *Cash App* representative.

25. This purported *Cash App* representative ("the Fraudster") was engaged in fraudulent scheme to deceive consumers by posting a false technical support number for *Cash App* on the Internet.

26. Falling prey to the scheme, Mr. Green provided his name and telephone number to the Fraudster.

27. The Fraudster then began to ask Mr. Green and Mr. Butler various intrusive questions regarding, *inter alia*, their bank account numbers and the amount of money therein.

28. After providing some of the requested information, Mr. Green and Mr. Butler began to question why the information was needed.

29. The Fraudster indicated that *Cash App* would be "refunding your money" to Mr. Green.

30. Mr. Butler then started receiving numerous erroneous alerts falsely reflecting that he had requested and received funds and initiated additional transactions despite that none of these transactions had been authorized by Mr. Butler or by Mr. Green.

31. At that point, Mr. Butler became suspicious and urged Mr. Green to hang up the telephone.

32. Shortly thereafter, both Mr. Green and Butler hung up their telephone.

33. After Mr. Green hung up from the call, he deleted *Cash App* from his mobile telephone.

34. However, Mr. Green soon discovered that more than a thousand dollars of funds had already been transferred out of his bank account with Capital One, N.A. without his authorization in multiple unauthorized withdrawals/transfer transactions.

35. These unauthorized transfers from Mr. Green's account were made without Mr. Green's consent and ultimately went to one or more accounts of unknown third parties.

36. Mr. Green received no benefit from the unauthorized transfers, nor were the funds transferred to Mr. Butler.

37. Moreover, as Defendants are well aware, fraudulent scams in which criminals pose *Cash App* representatives are extraordinarily common on *Cash App*.  See, e.g., https://www.suttonbank.com/services-tools/tools/prepaid-card-support.html ("BEWARE OF SCAMS!  . . . [S]cammers pose as customer service representatives. . . . . Beware of bogus Cash App websites and 1-800 numbers! They will attempt to obtain your login credentials, and gain access to your money!"); https://www.nytimes.com/2020/10/11/technology/fraud-payment-apps.html ("Of all the payment apps, fraud issues have been particularly acute for Square's Cash App."); https://myfox8.com/news/cash-app-scam-could-wipe-out-your-bank-account/ (Stating that "scammers pose as Cash App customer service representatives" and that "most of the complaints to the BBB have come from Cash App customers who did Google searches for support after encountering app issues. Their searches led to believable but bogus Cash App websites and fake customer service numbers. Scammers are standing by ready to steal your money, he said."); https://www.azfamily.com/news/investigations/3_on_your_side/cash-app-scam-leaves-valley-woman-homeless/article_7d9611d4-0983-11eb-bb6a-e372e209486e.html (describing a consumer robbed in the same manner as Plaintiff and stating:  "That toll-free number Jackson called was actually posted on the Internet by a scammer posing as a Cash App representative.  The con-man claimed he could help Jackson. But instead, he wiped out her Cash App account that had thousands of dollars.").

38. After he discovered the unauthorized transactions, Mr. Green immediately informed Capital One, N.A. of the unauthorized, fraudulent transfers.

39. Capital One, N.A. initially refunded the unauthorized transfers to Mr. Green's account.

40. Several months after the disputes, however, Capital One, N.A. subsequently changed its view of the unauthorized withdrawals, reversed the refunds in the account, and asserted that the fraudulent activity was solely the responsibility of Plaintiff and Defendant Square, Inc.

41. This situation is not unusual for Capital One, N.A. The Better Business Bureau has received more than 7,000 customer complaints and more than 3,300 relate to "Billing/Collection Issue[s]" they have experienced. Capital One Financial Corporation | Business Details | Better Business Bureau® Profile, available at https://www.bbb.org/us/va/richmond/profile/credit-cards-and-plans/capital-one-financial-corporation-0603-21009223/complaints (last accessed October 14, 2020).

42. Furthermore, between October 14, 2017 and October 14, 2020, the Consumer Financial Protection Bureau received 421 complaints related to Capital One's handling of consumer checking accounts, which includes 109 complaints relating to a "problem making or receiving payments[,]" 108 complaints related to "banking errors[,]" 90 complaints related to "funds not handled or disbursed as instructed[,]" and 114 complaints related to consumer complaints where the "transaction was not authorized[.]" Moreover, 56 of these complaints were lodged by New York consumers. *See* Consumer Financial Protection Bureau, Consumer Complaint Database, *available at* https://www.consumerfinance.gov/data-research/consumer-complaints/ (last accessed October 14, 2020).

43. After discovery of the unauthorized, transactions, Mr. Green also attempted to reach a representative of Square, Inc. via telephone. However, when Mr. Green called customer service, an automated message indicated that Square, Inc. provided no live human help for *Cash App* and that there are many people illegally impersonating *Cash App*.

44. Immediately thereafter, Mr. Green immediately informed Square, Inc. via e-mail that his *Cash App* account had been hacked.

45. Square, Inc. never responded to Mr. Green's disputes, nor has it refunded Mr. Green's account for the unauthorized, fraudulent charges.

46. Upon information and belief, Square, Inc. has taken no action in response to Mr. Green's disputes.

47. This situation is not unusual for Square, Inc. In addition to being widely reported on by the press (as noted above) and the subject of online warnings from partner banks (as noted above), this is evidenced by reports from the Better Business Bureau ("Pattern of Complaint . . . Square, Inc. came to BBB's attention in December 2010. A review of the company's complaints on file was done in October 2019. Based on BBB files this company has a pattern of complaints. Complaints on file state a lack of customer service specifically; a lack of timely response to urgent issues, assistance, and communication.") Square, Inc. | Business Details | Better Business Bureau® Profile, *available at* https://www.bbb.org/us/ca/san-francisco/profile/credit-card-merchant-services/square-inc-1116-370609/details#additional-info (last accessed June 17, 2020).

### FIRST CLAIM FOR RELIEF
**(Electronic Fund Transfer Act, 15 U.S.C. § 1693, *et seq*.)**
**(As to Defendant Capital One, N.A.)**

48. Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

7

49. Per the EFTA, Regulation E, and Regulation E's Official Interpretations, Defendant Capital One, N.A. bears the responsibility for unauthorized transfers like the present ones.

50. The EFTA caps consumer liability for unauthorized electronic fund transfer at $50 and the transactions at issue exceed that amount. 15 U.S.C. § 1693g(a).

51. Capital One, N.A. could not merely claim that it was the responsibility of Square, Inc. to handle Mr. Green's disputes and refuse to refund the fraudulent transactions.

52. Further, once Plaintiff notified Capital One, N.A. of the unauthorized transfers, Capital One, N.A. was required to conduct a bona fide reasonable investigation to determine if fraud occurred as required by the EFTA.

53. However, Capital One, N.A. failed to conduct a reasonable investigation.

54. A reasonable investigation would have included review of one or more of the following items, which would have led Capital One, N.A. to conclude that fraud had occurred and would have revealed, *inter alia*, the following:

   a. Plaintiff did not authorize the disputed transactions;

   b. Plaintiff promptly reported the fraudulent transactions;

   c. Plaintiff has no history of making false or unverifiable fraud reports;

   d. Plaintiff has no criminal history;

   e. Plaintiff has no history of irresponsible use of his account;

   f. Plaintiff has no history of frauds with Capital One, N.A., Square, Inc. or any other financial institution;

   g. No other proof exists to refute Plaintiff's claim.

55. Furthermore, the EFTA places the burden of proof on the financial institution to demonstrate that challenged transfers were authorized or, if they were unauthorized, that the consumer can be held liable for them. 15 U.S.C. § 1693g(b).

56. This burden of proof cannot be and was not plausibly met with regard to the contested transactions.

57. Capital One, N.A.'s acts and omissions set forth above constitute violations of the EFTA.

58. As a direct and proximate result of Capital One, N.A.'s violations of the EFTA, Plaintiff is entitled to an award of statutory and actual damages as well as attorney's fees and costs.

59. In light of the foregoing – in addition to all other relief sought herein – Plaintiff is also entitled to recover treble damages under Section 1693f(e).

## SECOND CLAIM FOR RELIEF
**(Deceptive Acts and Practices Unlawful, NYGBL § 349 *et seq.*)**
**(As to Defendant Capital One N.A.)**

60. Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

61. In the course of its dealings with Plaintiff, Defendant Capital One N.A. has engaged in deceptive conduct in the conduct of business, trade, commerce or the furnishing of a service in this state and constituted a violation of NYGBL § 349 independent of whether Capital One N.A.'s conduct violated any other law.

62. Specifically, but without limitation, Capital One N.A.'s deceptive conduct included:

   a. Falsely alleging that it had performed a *bona fide* investigation into the fraudulent transactions; and

b. Falsely alleging that the unauthorized transactions were the sole responsibility of Square, Inc.

63. Capital One N.A.'s conduct as alleged herein is "consumer oriented."

64. Indeed, far from a "one shot transaction," Capital One N.A. deals with a large volume of customers who dispute unauthorized charges.

65. Upon information and belief, Capital One N.A.'s misconduct as set forth above is part of a recurring policy and practice of seeking to avoid responsibility in refunding consumers for fraudulent transfers.

66. These policies and practices have the potential to be repeated with regard to a large number of consumers.

67. Each of these deceptive acts and practices is one that has a broad impact on consumers.

68. Due to these violations of NYGBL § 349, Plaintiff has suffered actual damages and is entitled to:

- actual damages;
- treble damages;
- punitive damages;
- declaratory judgment that Capital One, N.A. has violated the statute;
- injunctive relief barring Capital One, N.A. from henceforth committing the deceptive acts and practices set forth herein;
- costs; and
- reasonable attorney's fees.

## THIRD CLAIM FOR RELIEF
### (Electronic Fund Transfer Act, 15 U.S.C. § 1693, *et seq*.)
### (As to Defendant Square, Inc.)

69. Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

70. Per the EFTA, Regulation E, and Regulation E's Official Interpretations, Defendant Square, Inc. bears the responsibility for unauthorized transfers like the present ones.

71. Once Plaintiff notified Square, Inc. of the disputed the unauthorized transfers, Square, Inc. was required to conduct a bona fide reasonable investigation to determine if fraud occurred. This is required both by EFTA and the agreement between Plaintiff and Square, Inc. in *Cash App*'s Terms of Use.

72. However, Square, Inc. failed to conduct a reasonable investigation.

73. A reasonable investigation would have included review of one or more of the following items, which would have led Square, Inc. to conclude that fraud had occurred and would have revealed, *inter alia*, the following:

   a. Plaintiff did not authorize the disputed transactions;

   b. Plaintiff promptly reported the fraudulent transactions;

   c. Plaintiff has no history of making false or unverifiable fraud reports;

   d. Plaintiff has no criminal history;

   e. Plaintiff has no history of irresponsible use of his account;

   f. Plaintiff has no history of frauds with Capital One, N.A., Square, Inc. or any other financial institution;

   g. No other proof exists to refute Plaintiff's claim.

74. The EFTA caps consumer liability for unauthorized electronic fund transfer at $50 and the transaction at issue exceeds that amount. 15 U.S.C. § 1693g(a).

75. Moreover, the EFTA places the burden of proof on the financial institution to demonstrate that challenged transfers were authorized or, if they were unauthorized, that the consumer can be held liable for them. 15 U.S.C. § 1693g(b).

76. This burden of proof cannot be and was not plausibly met with regard to the contested transactions and Square, Inc. could not have plausibly concluded that the transfers were authorized.

77. In short, any reasonable investigation of these transactions would have resulted in Square, Inc. crediting Plaintiff's account for the stolen funds.

78. Square, Inc. did not conduct good faith investigations regarding the fraudulent transfers.

79. Square, Inc.'s acts and omissions set forth above constitute violations of the EFTA.

80. As a direct and proximate result of Square, Inc.'s violations of the EFTA, Plaintiff is entitled to an award of statutory and actual damages as well as attorney's fees and costs.

81. In light of the foregoing – in addition to all other relief sought herein – Plaintiff is also entitled to recover treble damages under Section 1693f(e).

### FOURTH CLAIM FOR RELIEF
**(Deceptive Acts and Practices Unlawful, NYGBL § 349 *et seq.*)**
**(As to Defendant Square, Inc.)**

82. Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

83. In the course of its dealings with Plaintiff, Defendant Square, Inc. has engaged in deceptive conduct in the conduct of business, trade, commerce or the furnishing of a service in

this state and constituted a violation of NYGBL § 349 independent of whether Square, Inc.'s conduct violated any other law.

84. Specifically, but without limitation, Square, Inc.'s deceptive conduct included ignoring any request by Plaintiff to even investigate the fraudulent transaction despite specifying in *Cash App*'s Terms of Use that they would do so.

85. Square, Inc.'s conduct as alleged herein is "consumer oriented."

86. Indeed, far from a "one shot transaction," Square, Inc. deals with a large volume of customers who dispute unauthorized charges.

87. Upon information and belief, Square, Inc.'s misconduct as set forth above is part of a recurring policy and practice of seeking to avoid any responsibility in refunding consumers for fraudulent transfers.

88. These policies and practices have the potential to be repeated with regard to a large number of consumers.

89. Each of these deceptive acts and practices is one that has a broad impact on consumers.

90. Due to these violations of NYGBL § 349, Plaintiff has suffered actual damages and is entitled to:

- actual damages;
- treble damages;
- punitive damages;
- declaratory judgment that Square, Inc. has violated the statute;
- injunctive relief barring Square, Inc. from henceforth committing the deceptive acts and practices set forth herein;

- costs; and

- reasonable attorney's fees.

**WHEREFORE,** Plaintiff seeks judgment in his favor and damages against Defendants:

A. Awarding Plaintiff against Defendants actual damages, treble damages, statutory damages, punitive damages, declaratory relief, injunctive relief, costs, and reasonable attorneys' fees; and

B. such other and further relief as may be necessary, just, and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury as to all issues so triable.

Dated: October 14, 2020

*/s/ Evan S. Rothfarb*
Evan S. Rothfarb
Schlanger Law Group LLP
80 Broad Street, Suite 1301
New York, NY 10004
T: 212-500-6114
F: 646-612-7996
E: erothfarb@consumerprotection.net

*Counsel for Plaintiff*