

Isaac B. Zaur
izaur@cgr-law.com
Direct: 212.633.4314

December 15, 2021

**VIA ECF**
The Honorable Edgardo Ramos
United States District Court for the Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square, Courtroom 619
New York, New York 10007

      Re:    *Green v. Capital One, N.A. v. Square, Inc.*, **Index No. 1:20-cv-04655**

Dear Judge Ramos:

      On behalf of third-party defendant Square, Inc., we write pursuant to Individual Rule 2(a)(ii) to request a pre-motion conference to address Square's contemplated motion to dismiss Capital One's Third-Party Complaint ("TPC"). Square owes no indemnification obligation to Capital One under the NACHA rules, because Square was not a "depository financial institution" ("DFI") capable of interacting directly with Capital One through the ACH system. Rather, Square accessed the ACH network only through its own depository bank, which is the only entity that could have plausibly made any warranty to Capital One in connection with this transaction. Each of Capital One's fallback theories of liability fails for related reasons.

**Square Owes Capital One No Indemnification Obligation Under the NACHA Rules**

      Square owes no indemnity obligation because, even on the facts alleged, Square made no warranty to Capital One when it allegedly initiated a transaction to debit Gerald Green's account.

      The Automated Clearing House ("ACH") network is a bank-mediated mechanism for transmitting money between account holders. Every ACH transaction involves two banks, or "DFIs." An "Originating DFI" or "ODFI" is a bank that transmits a transfer request; a "Receiving DFI" or "RDFI" is the bank receiving such a request (here, Capital One). Typically, the ODFI and RDFI each act on behalf of their respective account holders (such as an employer and employee) who have an agreement concerning the amount and direction of the transfer. However, the rules governing the ACH network do not create any direct relationship between the RDFI and the non-bank originator who accesses the network through an ODFI.[1]

      The NACHA Rules do contain express warranties and indemnification obligations, which are incorporated in individual agreements among network participants. Most notably, an ODFI warrants, to the RDFI, that a transaction is properly authorized. NACHA Rule § 2.4.1.1(a). The ODFI indemnifies the RDFI for any breach of this warranty or of Regulation E of the Electronic Funds Transfer Act ("EFTA"). *Id.* §§ 2.4.5.1 & 2.4.5.2. However, a non-bank originator of a

---

[1] The NACHA Rules are available by subscription at https://www.nachaoperatingrulesonline.org/. True and correct copies of the NACHA Rules cited herein are annexed hereto for the Court's convenience.

transfer always acts through an intermediary bank, *see id.* § 2.15.2, and makes no separate warranty to an RDFI. At the time of the Green transaction, Square was not a bank, thus was not a DFI, and therefore could not serve as an ODFI.[2] Accordingly, it made no warranty (and owes no indemnity) to the RDFI in the Green transaction. Rather, Square acted as a Third-Party Sender by agreement with a bank that acted as ODFI when Square originated the Green transaction. *Id.* §§ 2.2.2.1, 8.110 & 8.111. In light of that role, Square had no agreement with any RDFI, and made no warranty to any RDFI. *See id.*

Here, Capital One alleges that an unknown party fraudulently obtained access to Green's Cash App account and—masquerading as Green—authorized Square to initiate an ACH transaction debiting Green's account at Capital One. (TPC ¶ 50.) Translated into the vocabulary of the NACHA Rules, the allegation is that Square (as "Third-Party Sender") was duped into directing its own bank (as ODFI) to transmit a debit transaction to Capital One (as RDFI), upon receipt of which Capital One debited the account of its account holder Green (the "Receiver"). (In a second, nearly-simultaneous ACH transaction, a sum equivalent to the Green debit was presumably credited to the account of the alleged fraudster.) Critically, the only warranty made to Capital One (as RDFI) concerning the legitimacy of the Green transaction ran from the ODFI—not from Square. Hence, Capital One's claim for indemnification under the NACHA Rules must be dismissed.

**Capital One's Negligent Misrepresentation Claim Fails Because the NACHA Rules Do Not Establish a "Special Relationship" between Square and Capital One**

By allocating risk among ACH participants, the NACHA Rules provide a remedy if a party suffers damages from a breach of warranty. Capital One cannot bypass that system with a tort claim against Square. *See Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 297 (S.D.N.Y. 2015) (economic loss doctrine bars negligent misrepresentation claim where damages "are the type remedial in contract"). Moreover, negligent misrepresentation is "strict[ly] limit[ed]" to parties with "actual privity of contract" or a relationship "so close as to approach that of privity." *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 114-15 (2d Cir. 2012). Capital One alleges no contract, or even "direct contact" between itself and Square, *id.*, and we have identified no authority for the proposition that mere participation in the ACH network creates a duty beyond the prescribed obligations in the NACHA Rules. Indeed, Capital One makes no allegation "that could remotely satisfy" the standard of a "special or privity-like relationship." *Id.* Finally, there is no misrepresentation at all: Capital One fails to allege any reason Square would know the Green transaction lacked proper authorization or any negligence by Square in seeking to prevent unauthorized transfers, and the claim that Square did not

---

[2] Beginning on March 1, 2021, a Square affiliate named Square Financial Services commenced banking operations under charters from the FDIC and Utah Department of Financial Institutions. Square Financial Services is not a party and did not exist at the time of the events at issue here. Additionally, on December 1, 2021, Square announced its "Block" brand launch and will formally change its legal name from "Square, Inc." to "Block, Inc." upon satisfying all applicable legal requirements.

properly investigate is not actionable. *Burns v. Del. Charter Guar. & Tr. Co.*, 805 F. Supp. 2d 12, 28 (S.D.N.Y. 2011) ("failure to investigate" does not establish negligent misrepresentation).

**Promissory Estoppel Does Not Apply**

Promissory estoppel is a "narrow doctrine" that applies only "where some contract formation problem would otherwise prevent enforcement—for example, the Statute of Frauds or a failure of consideration." *BNP Paribas Mortg. Corp. v. Bank of Amer., N.A.*, 949 F. Supp. 2d 486, 516 (S.D.N.Y. 2013). Capital One alleges no such "contract formation" problem. Indeed, it has no contract (properly formed or otherwise) with Square. However, Capital One is bound by the NACHA Rules through contracts with other network participants. (TPC ¶ 67.) Those separate contractual obligations of Capital One's—concerning the "same subject matter" as its promissory estoppel claims—precludes these claims. *See CUnet, LLC v. Quad Partners, LLC*, No. 16-cv-6327, 2017 WL 945937, at *6 (S.D.N.Y. Mar. 7, 2017).

**No Contribution Claim Exists Under the EFTA**

Green's surviving claims against Capital One arise under federal statute, and "there is no claim for contribution unless the operative federal statute provides one." *In re Bernard L. Madoff Inv. Sec. LLC*, 721 F.3d 54, 65 (2d Cir. 2013); *see also Herman v. RSR Sec. Servs., Ltd.*, 172 F.3d 132, 143-44 (2d Cir. 1999) (contribution and indemnity claims fail where federal statue provides no such right). The EFTA does not provide for contribution or indemnity, *see* 15 U.S.C. §§ 1693-1693r, nor may such a right be inferred, because the statute *does* establish a comprehensive remedial scheme that could—but does not—allow for contribution or indemnity, *see Access 4 All, Inc. v. Trump Int'l Hotel & Tower Condo.*, 2007 WL 633951, No. 04-cv-7497, at *7 (S.D.N.Y. Feb. 26, 2007). Capital One "cannot use New York State common law as an end-around to make a claim for contribution that it could not make under the federal statutory scheme." *KBL Corp v. Arnouts*, 646 F.Supp. 2d 335, 341 (S.D.N.Y. 2009). Finally, even if a state-law contribution or indemnity claim were not foreclosed, New York law permits contribution only in the case of shared tort liability of the kind barred by the economic loss doctrine here. *See* C.P.L.R. 1401 (contribution allowed if parties share liability "for the same personal injury, injury to property or wrongful death"); *Bd. of Educ. of Hudson City Sch. Dist. v. Sargent, Webster, Crenshaw & Folley*, 71 N.Y.2d 21, 26 (1987) ("purely economic loss resulting from a breach of contract" does not give rise to contribution claim).

We thank the Court for its attention to this matter and look forward to discussing Square's contemplated motion at the Court's convenience.

Respectfully submitted,

Isaac B. Zaur

Enc.
cc: All counsel (via ECF)

# ARTICLE TWO
# Rights and Responsibilities of ODFIs, Their Originators, and Third-Party Senders

## SECTION 2.1 General Rule – ODFI Is Responsible for Entries and Rules Compliance

An ODFI is responsible for all Entries originated through the ODFI, whether by an Originator or through a Third-Party Sender, including Entries Transmitted through Direct Access. An ODFI is responsible for its Originators' and Third-Party Senders' compliance with these Rules.

## SECTION 2.2 Prerequisites to Origination

An ODFI must perform, or ensure that an Originator or Third-Party Sender performs, each of the following before permitting the Originator or Third-Party Sender to originate any Entry:

### SUBSECTION 2.2.1 ODFI Verification of Originator or Third-Party Sender Identity

The ODFI must utilize a commercially reasonable method to verify the identity of an Originator or Third-Party Sender at the time the ODFI enters into an Origination Agreement with the Originator or Third-Party Sender.

### SUBSECTION 2.2.2 ODFI Agreement with Originator, Third-Party Sender, or Sending Point

### SUBSECTION 2.2.2.1 ODFI Must Enter Origination Agreement with Originator

An ODFI must enter into an Origination Agreement with each Originator for which the ODFI will originate Entries. The Origination Agreement must include, at a minimum, each of the following:

(a) The Originator must authorize the ODFI to originate Entries on behalf of the Originator to Receivers' accounts;

(b) The Originator must agree to be bound by these Rules;

(c) The Originator must agree not to originate Entries that violate the laws of the United States;

(d) Any restrictions on the types of Entries that may be originated;

(e) The right of the ODFI to terminate or suspend the agreement for breach of these Rules in a manner that permits the ODFI to comply with these Rules; and

(f) The right of the ODFI to audit the Originator's compliance with the Origination Agreement and these Rules.

### SUBSECTION 2.2.2.2 ODFI Must Enter Origination Agreement with Third-Party Sender

An ODFI must enter into an Origination Agreement with each Third-Party Sender for which the ODFI will originate Entries. The Origination Agreement must include each of the following:

(a) The Third-Party Sender, on behalf of the Originator, must authorize the ODFI to originate Entries on behalf of the Originator to Receivers' accounts;

(b) The Third-Party Sender must agree to be bound by these Rules;

(c) The Third-Party Sender must agree not to originate Entries that violate the laws of the United States;

(d) Any restrictions on the types of Entries that may be originated;

(e) The right of the ODFI to terminate or suspend the agreement, or any Originator of the Third-Party Sender, for breach of these Rules in a manner that permits the ODFI to comply with these Rules;

(f) The right of the ODFI to audit the Third-Party Sender's and its Originators' compliance with the Origination Agreement and these Rules; and

(g) The Third-Party Sender must agree that, before permitting an Originator to originate any Entry

▲ *Where the ODFI has accepted, or has agreed to accept, the Return Entry, and the RDFI subsequently still requests evidence of authorization of the Entry, the ODFI must provide the original, copy, or other accurate Record to the RDFI within ten Banking Days of the RDFI's subsequent request.*

*The ODFI must provide this information to the RDFI without charge.*

(b) *At the request of its ODFI, the Originator must provide either*

  (1) *an accurate record evidencing the Receiver's authorization, or*

  (2) *contact information for the Originator that, at a minimum, includes (i) the Originator's name, and (ii) the Originator's phone number or email address for inquiries regarding authorization of Entries.*

*The Originator must provide the record or information to the ODFI for its use or for the use of an RDFI requesting the information in such time and manner as to enable the ODFI to deliver the information to the requesting RDFI within ten Banking Days of the RDFI's request.*

### SUBSECTION 2.3.4 Restrictions on Data Passing

*An ODFI must not disclose, and must ensure that the Originator and any Third-Party Service Provider acting on behalf of the Originator or ODFI do not disclose, the Receiver's account number or routing number to any third party for such third party's use, directly or indirectly, in initiating a separate debit Entry.*

## SECTION 2.4 General Warranties and Liabilities of Originating Depository Financial Institutions

### SUBSECTION 2.4.1 General ODFI Warranties

An ODFI Transmitting an Entry warrants the following to each RDFI and ACH Operator in connection with such Entry at the time of the Entry's Transmission by or on behalf of the ODFI, unless another effective time frame is provided in this Subsection 2.4.1.

### SUBSECTION 2.4.1.1 The Entry Is Authorized by the Originator and Receiver

(a) The Entry has been properly authorized by the Originator and the Receiver in accordance with these Rules.

(b) The Originator's authorization has not been revoked, the Origination Agreements concerning the Entry have not been terminated, and neither the ODFI, any Third-Party Sender, nor the Originator has actual knowledge of the revocation of the Receiver's authorization or of the termination of the agreement between the RDFI and the Receiver concerning the Entry.

(c) At the time the Entry is processed by an RDFI, the authorization for that Entry has not been terminated, in whole or in part, by operation of law. This Subsection 2.4.1.1(c) shall not apply if the RDFI has actual knowledge of the circumstances giving rise to such termination at the time it processes the Entry and the ODFI does not have such actual knowledge.

▲ *The ODFI's warranties regarding authorization, as defined in this subsection 2.4.1.1, do not apply to credit Entries where both the Originator and Receiver are natural Persons.*

### SUBSECTION 2.4.1.2 The Entry Complies with the Rules

The Entry complies with these Rules, including the use of the proper Standard Entry Class Code.

### SUBSECTION 2.4.1.3 The Entry Is Not Transmitted on Behalf of a Suspended Originator or Third-Party Sender

The Entry is not Transmitted on behalf of any Originator or Third-Party Sender that the ODFI has been directed to suspend or that appears on a list of suspended Originators and Third-Party Senders issued by the National Association from time to time, in each case in accordance with Appendix Nine, Subpart 9.4.7.6 (Suspension and Appeal).

### SUBSECTION 2.4.1.4 The Entry Contains Required Information

The Entry contains the Receiver's correct account number and all other information necessary to enable the RDFI to comply with the requirements of Subsection 3.1.5 (RDFI Obligation to Provide Information about Entries), except for information within the purview of the RDFI's relationship with the Receiver. All information Transmitted with the Entry is related to the payment represented by the Entry.

▲*Approved September 30, 2020, Effective September 17, 2021*

### SUBSECTION 2.4.1.5  Credit Entry Is Timely

The credit Entry is timely.

### SUBSECTION 2.4.1.6  Debit Entry Satisfies an Obligation, Corrects an Error, or Reclaims an Amount Received after Death or Legal Incapacity

The debit Entry is:

(a) for an amount that will be due and owing to the Originator from the Receiver on the Settlement Date;

(b) for a sum specified by the Receiver to be paid to the Originator;

(c) to correct a previous credit Entry that was an Erroneous Entry, or

(d) to reclaim from an RDFI an amount received by a recipient after death or legal incapacity of the recipient or the death of a beneficiary.

### SUBSECTION 2.4.1.7  Secure Transmission of Banking Information

Banking information for the Entry is Transmitted in compliance with the requirements of Section 1.7 (Secure Transmission of ACH Information Via Unsecured Electronic Networks).

### SUBSECTION 2.4.2  Exceptions to ODFI Warranties for Entries Originated Using Corrected Data from Notification of Change

An ODFI that relies on the information contained within the Corrected Data field of a Notification of Change Entry or Corrected Notification of Change Entry makes no warranty under subsections 2.4.1.2 (The Entry Complies with the Rules) and 2.4.1.4 (The Entry Contains Required Information) with respect to the corrected information in subsequent Entries.

### SUBSECTION 2.4.3  ODFI Warranties Do Not Apply to Goods or Services

The warranties contained within Subsection 2.4.1 (General ODFI Warranties) and the requirements of Subsection 2.3.1 (General Rule – Originator Must Obtain Authorization from Receiver) do not apply to the goods or services to which the Entry relates.

### SUBSECTION 2.4.4  ODFI Warranties for Entries Through Its Sending Points

An ODFI using a Sending Point to Transmit Entries to an ACH Operator shall be deemed to have made the warranties of Subsection 2.4.1 (General ODFI Warranties) for each Entry containing the ODFI's routing number that is Transmitted by the Sending Point, regardless of whether the Sending Point was authorized by the ODFI to Transmit the Entry.

### SUBSECTION 2.4.5  General Indemnity by ODFI

### SUBSECTION 2.4.5.1  Indemnity for Breach of Warranty

An ODFI shall indemnify every RDFI and ACH Operator from and against any and all claims, demands, losses, liabilities, and expenses, including attorneys' fees and costs, that result directly or indirectly from (a) the breach of any warranty made to such party by the ODFI under these Rules, or (b) the debiting or crediting of an Entry to a Receiver's account in accordance with the terms of the Entry, including any claims, demands, losses, liabilities, or expenses, and/or attorneys' fees and costs that result, either directly or indirectly, from the return of one or more items or Entries of the Receiver due to insufficient funds caused by a debit Entry.

### SUBSECTION 2.4.5.2  Indemnity for Failure to Comply with Regulation E

An ODFI shall indemnify every RDFI and ACH Operator from and against any claims, demands, losses, liabilities, or expenses, including attorneys' fees and costs, based on the ground that the failure of the ODFI to comply with any provision of these Rules resulted, either directly or indirectly, in the violation by an RDFI of the Federal Electronic Fund Transfer Act or Federal Reserve Board Regulation E.

## SECTION 2.5  Provisions for Specific Types of Entries

### SUBSECTION 2.5.1  Specific Provisions for ARC Entries (Accounts Receivable Entry)

### SUBSECTION 2.5.1.1  General Rule for ARC Entries

An ARC Entry is a Single Entry debit originated based on an Eligible Source Document provided to an Originator by a Receiver (1) via U.S. mail or delivery service, (2) at a dropbox location, or (3) in person for payment of a bill at a manned location. An ODFI must perform, or ensure that its Originator or Third-Party Sender performs, the requirements of Subsection 2.5.1.2 (Authorization of ARC Entries by Notification), Subsection 2.5.1.3 (Eligible Source Document Required) and Subsection

authorized by notice in accordance with Subsection 2.14.2 (Authorization of Return Fee Entries) and related to an underlying ARC, BOC, or POP Entry must contain the same information identified within the Individual Name/Receiving Company Name field of the ARC, BOC, or POP Entry to which the Return Fee Entry relates.

### SUBSECTION 2.14.4 Other Requirements of Return Fee Entries

An Originator may impose only one Return Fee in relation to an underlying Entry or item that was returned, whether such Return Fee is collected via the ACH or otherwise. An Originator may reinitiate a Return Fee Entry in accordance with Subsection 2.12.4 (Reinitiation of Returned Entries), but an Originator may not originate a Return Fee Entry with respect to the return of another Return Fee Entry.

A Return Fee Entry authorized by notice in accordance with Subsection 2.14.2 (Authorization of Return Fee Entries) must have a Settlement Date within 45 days of the Settlement Date of the Return Entry of the underlying debit Entry or the return of the other underlying item.

### SUBSECTION 2.14.5 Additional ODFI Warranty for Return Fee Entries

In addition to the other warranties contained within these Rules, an ODFI initiating a Return Fee Entry warrants to each RDFI and ACH Operator that the Originator imposing the Return Fee has not and will not impose any other Return Fee in relation to the underlying Entry or item that was returned unpaid.

## SECTION 2.15 Obligations of Third-Party Senders, and of ODFIs and Originators That Use Third-Party Senders

An ODFI may originate Entries initiated by a Third-Party Sender, subject to compliance with these Rules, including Section 2.2 (Prerequisites to Origination).

### SUBSECTION 2.15.1 Third-Party Senders' Provision of Information to ODFIs

A Third-Party Sender must disclose to the ODFI any other Third-Party Sender for which it Transmits Entries to the ODFI, prior to Transmitting Entries for the other Third-Party Sender.

A Third-Party Sender must, upon the ODFI's request, provide the ODFI with any information the ODFI reasonably deems necessary to identify each Originator or other Third-Party Sender for which the Third-Party Sender Transmits Entries. A Third-Party Sender must also, upon the ODFI's request, provide the ODFI with the information required by Subsection 2.17.3 (Third-Party Sender Registration) for purposes of the ODFI's registration of the Third-Party Sender with the National Association. The information must be provided to the ODFI by the Third-Party Sender within two Banking Days of receipt of the ODFI's request.

### SUBSECTION 2.15.2 Warranty of and Indemnification by Third-Party Senders

A Third-Party Sender initiating one or more Entries through an ODFI to a Receiver's account warrants to the ODFI that the Originator has agreed to assume the responsibilities of an Originator under these Rules. In any case where such Originator fails to perform its obligations as an Originator under these Rules, the Third-Party Sender authorizing such Entry indemnifies the ODFI from and against any and all claims, demands, losses, liabilities, and expenses, including attorneys' fees and costs, that result directly or indirectly from the failure of the Originator to perform its obligations as an Originator under these Rules.

In addition to the other warranties contained within these Rules, a Third-Party Sender also makes to the ODFI each of the warranties set forth at Subsection 2.4.1 (General ODFI Warranties), Subsection 2.5.17.4 (Additional ODFI Warranties for Debit WEB Entries), and Section 5.2 (Warranties of Gateway).

### SUBSECTION 2.15.3 Performance and Warranty of ODFI Obligations by Third-Party Senders

To the extent that a Third-Party Sender performs any of the obligations of an ODFI under these Rules, the Third-Party Sender must perform the requirements of these Rules otherwise applicable to the ODFI, including, but not limited to, monitoring the origination and return activity of its Originators across multiple Settlement Dates, enforcing restrictions on the types of Entries that may be originated through its Originators, and enforcing, with respect to its Originators, the exposure limit set by the Third-Party Sender or ODFI as set forth in Subsection 2.2.3 (ODFI Risk Management), and warrants that it is legally able to do so. The performance by a Third-Party Sender of any of the obligations of the ODFI under these Rules shall not relieve the ODFI of any of its obligations under these Rules.

### SECTION 8.105 "Single Entry"

a credit or debit Entry initiated by an Originator in accordance with the Receiver's authorization for a one-time transfer of funds to or from the Receiver's account.

### SECTION 8.106 "Standard Entry Class Code" or "SEC Code"

a three-character code that identifies the type of Entry.

### ▲SECTION 8.107 "Standing Authorization" (new section)

*an advance authorization by a Receiver of future Entries to the Receiver's Consumer Account that requires further affirmative action by the Receiver to initiate those future Entries.*

### ▲SECTION 8.108 "Subsequent Entry" (new section)

*an Entry to a Consumer Account that is initiated by a Receiver's affirmative action in accordance with the terms of a Standing Authorization.*

### SECTION 8.109 "Telephone-Initiated Entry" or "TEL Entry" or "TEL"

a debit Entry initiated by an Originator to a Consumer Account of the Receiver based on an oral authorization obtained over the telephone.

▲*(1) a debit Entry initiated by an Originator to a Consumer Account of the Receiver based on an Oral Authorization obtained via a telephone call; or (2) at the discretion of the Originator, a debit Subsequent Entry for which the Receiver's affirmative action for the initiation of the Subsequent Entry is communicated by the Receiver to the Originator orally via a telephone call, regardless of the manner in which the Standing Authorization was obtained.*

### SECTION 8.110 "Third-Party Sender"

a type of Third-Party Service Provider that acts as an intermediary in Transmitting Entries between an Originator and an ODFI, including through Direct Access, and acts on behalf of an Originator or another Third-Party Sender. A Third-Party Sender must have an Origination Agreement with the ODFI of the Entry. A Third-Party Sender is never the Originator for Entries it Transmits on behalf of another Organization. However, a Third-Party Sender of Entries may also be an Originator of other Entries in its own right.

### SECTION 8.111 "Third-Party Service Provider"

an Organization that performs any functions on behalf of the Originator, the Third-Party Sender, the ODFI, or the RDFI (not including the Originator, ODFI, or RDFI acting in such capacity for such Entries) related to the processing of Entries, including the creation of the Files or acting as a Sending Point or Receiving Point on behalf of a Participating DFI. An Organization acting as Third-Party Sender also is a Third-Party Service Provider.

### SECTION 8.112 "Transaction Account"

a "transaction account" as that term is defined in Regulation D.

### SECTION 8.113 "Transmit"

to send by Electronic means of communication.

### SECTION 8.114 "Truncation"

a process whereby Checks are presented by Transmission of information describing the Check rather than by the delivery of the Check itself.

### SECTION 8.115 "Unauthorized Entry Fee"

a fee paid by an ODFI to the respective RDFI for a debit Entry (except for a debit IAT Entry) that is Returned to the ODFI with a Return reason code of R05, R07, R10, R29, or R51.

❖*a fee paid by an ODFI to the respective RDFI for a debit Entry (except for a debit IAT Entry) that is Returned to the ODFI with a Return reason code of R05, R07, R10, R11, R29, or R51.*

### SECTION 8.116 "Unauthorized Entry Return Rate"

the rate at which an Originator's or Third-Party Sender's debit Entries are returned on the basis that they were unauthorized (Return Reason Codes R05, R07, R10, R11, R29, or R51), as calculated in accordance with Subsection 2.17.2.1(d) (ODFI Return Rate Reporting Regarding an Originator's or Third-Party Sender's Unauthorized Entry Return Rate).

❖*Approved April 12, 2019, Effective April 1, 2021*

▲*Approved September 30, 2020, Effective September 17, 2021*