**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GERALD GREEN,<br><br>               *Plaintiff,*<br>v.<br><br>CAPITAL ONE, N.A.,<br><br>               *Defendant and*<br>               *Third-Party Plaintiff.*<br><br>v.<br><br>SQUARE, INC.,<br><br>               *Third-Party Defendant.* | Case No. 1:20-cv-04655<br>Hon. Edgardo Ramos |

**CAPITAL ONE, N.A.'S OPPOSITION TO THIRD-PARTY DEFENDANT SQUARE, INC.'S MOTION TO DISMISS CAPITAL ONE, N.A.'S THIRD-PARTY COMPLAINT**

**TROUTMAN PEPPER**
**HAMILTON SANDERS LLP**

Stephen J. Steinlight, Esq.
875 Third Avenue
New York, NY  10022
Telephone: (212) 704-6067
Stephen.Steinlight@Troutman.com

*Attorneys for Defendant Capital One, N.A.*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................................... 2

ARGUMENT ................................................................................................................................ 8

I.      CAPITAL ONE HAS PLED A PLAUSIBLE CLAIM FOR BREACH OF
WARRANTY......................................................................................................... 8

II.     CAPITAL ONE HAS PLED A VALID CLAIM FOR NEGLIGENT
MISREPRESENTATION .................................................................................... 11

        A.      Capital One Has Alleged Facts Showing that Square and Capital One were
in Privity................................................................................................... 12

        B.      Capital One Has Alleged Facts that Square Was Negligent.................... 13

III.    CAPITAL ONE HAS PLED A VALID CLAIM FOR PROMISSORY ESTOPPEL ....... 13

IV.    CAPITAL ONE HAS PLED A VALID CLAIM FOR CONTRIBUTION AND
INDEMNIFICATION .......................................................................................... 15

CONCLUSION ........................................................................................................................... 17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................................................8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)........................................................................................................8

*In re Bernanrd L Madoff Inv. Sec. LLC*,
   721 F.3d 54 (2d Cir. 2013)............................................................................................15

*BNP Paribas Mortg. Corp v. Bank of Amer., N.A.*,
   949 F.Supp.2d 486 (S.D.N.Y. 2013).............................................................................15

*CBS v. Ziff-Davis Pub. Co.*,
   553 N.E.2d 997 (N.Y. 1990)...........................................................................................9

*Clinton Plumbing and Heating of Trenton, Inc. v Ciaccio*,
   CIV. 09-2751, 2010 WL 4224473 (E.D.Pa. 2010) ........................................................9

*Eternity Global Master Fund Ltd v. Morgan Guaranty Trust Co. of New York*,
   375 F.3d 168 (2d Cir. 2004)............................................................................................8

*Graham-Johnson v City of Albany*,
   119CV01274BKSCFH, 2021 WL 1614763 (N.D.N.Y. Apr. 26, 2021)...........................16, 17

*J.A.O. Acquisition Corp. v. Stavitsky*,
   8 N.Y.3d 144 (2007) ....................................................................................................11

*Kaye v. Grossman*,
   202 F.3d 611 (2d Cir.2000)...........................................................................................15

*Kimmell v. Schaefer*,
   675 N.E.2d 450 (N.Y. 1996).........................................................................................12

*In re M/V MSC Flaminia*,
   339 F. Supp. 3d 185 (S.D.N.Y. 2018).............................................................................8

*Mandarin Trading Ltd. v. Wildenstein*,
   944 N.E.2d 1104 (N.Y. 2011).......................................................................................12

*Marc J. Bern & Partners LLP v. U.S. Legal Support*,
   No. 17 Civ. 6771 (ER), 2018 WL 2943784, (S.D.N.Y. June 11, 2018)..................................11

*Max Impact, LLC v. Sherwood Group, Inc.*,
  2012 U.S. Dist. LEXIS 126293 (S.D.N.Y. Aug. 16, 2012) ....................................................8

*Metro. Coal Co. v. Howard*,
  155 F.2d 780 (2d Cir. 1946)....................................................................................................8

*NTT American Inc. v. Tennessee Data Systems, LLC*,
  No. 17-CV-08274 (AT)(SN), 2018 WL 5493088 (S.D.N.Y. Oct. 11, 2018) .........................13

*Pearce v. Manhattan Ensemble Theater, Inc.*,
  528 F.Supp.2d 175 (S.D.N.Y. 2007)......................................................................................15

*Promuto v. Waste Mgmt., Inc.*,
  44 F. Supp. 2d 628 (S.D.N.Y. 1999).........................................................................................8

*Sec. First Bank v. Burlington N. & Santa Fe Ry. Co.*,
  213 F. Supp. 2d 1087 (D. Neb. 2002) ....................................................................................17

*Trustees of Columbia Univ. v. Mitchell/Giurgola Assocs.*,
  109 A.D.2d 449, 492 N.Y.S.2d 371 (1st Dep't 1985) .............................................................16

*Vigneri v. U.S. Bank National Association*,
  2005 WL 2180346 (D. Neb. Sept. 5, 2005) ...........................................................................16

*Weinreb v. Hosp. For Joint Diseases Orthopedic Inst.*,
  404 F.3d 167 (2d Cir. 2005)...................................................................................................13

*Yoomi Babytech, Inc. v. Anvyl, Inc.*,
  No. 20 Civ. 7933 (ER), 2021 WL 4332258 (S.D.N.Y. Sept. 22, 2021) ..................................11

**Statutes**

Electronic Funds Transfer Act, 15 U.S.C. § 1693, *et seq.* .................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 9(b) .................................................................................................................11

Fed. R. Civ. P. 12(b)(6)...................................................................................................1, 7, 8

National Automated Clearing House Association Rule § 2.15.3...............................................10

National Automated Clearing House Association Rule § 8.110................................................9

## PRELIMINARY STATEMENT

Defendant Capital One, N.A. ("Defendant," "Third-Party Plaintiff," or "Capital One") responds to and opposes the Motion to Dismiss [ECF No. 67] filed under Fed. R. Civ. P. 12(b)(6) by Third-Party Defendant, Square, Inc. ("Third-Party Defendant" or "Square").

First and foremost, Square's Motion to Dismiss is a sham representation of Square's role, responsibilities, and conduct in the electronic fund transfers at-issue.  Indeed, Square severely understates the central and pivotal part that Square played in these transactions and the plausible liability that Square has to Capital One.  Specifically, the alleged fraudulent electronic funds transfers, as alleged by Plaintiff Gerald Green, were orchestrated entirely through the use of Square's Cash App software as a conduit by the unknown fraudster.  When Capital One communicated with Square to determine whether Plaintiff's disputed funds transfers were in-fact authorized by Plaintiff via Cash App or the result of an unauthorized fraud, Square, which was in the best – and only – position to make this determination by analyzing its own software data, negligently misrepresented to Capital One that Square had conducted a reasonable and good faith investigation into Plaintiff's dispute and falsely stated to Capital One that Plaintiff had authorized the transfers.  Accordingly, as a result of Square's misrepresentations that the transfers were legitimate, Capital One declined to permanently credit Plaintiff's deposit account, and therefore, Square bears responsibility for any exposure that Capital One may have to Plaintiff.

Ultimately, Square's Rule 12 motion is entirely improper as it asks the Court to consider alleged factual matters that go far afield and well outside of four corners of Capital One's well-pleaded Third-Party Complaint and to assume certain facts without any proper discovery and an underlying factual foundation.

1

For the reasons set forth herein, this Court should deny the Motion to Dismiss as Capital One has alleged sufficient facts in its Third-Party Complaint to state plausible causes of action against Square for breach of warranty (Count I), negligent misrepresentation (Count II), promissory estoppel (Count III), contribution and indemnification (Count IV).  Moreover, even if the Court were to conclude that certain elements of Capital One's claims have not been alleged, the Court should permit Capital One thirty (30) days to file an amended pleading.

## FACTUAL AND PROCEDURAL BACKGROUND

This action arises out of Square's Cash App product, which  is a mobile payment service that allows for person-to-person money transfer via Cash App's mobile device application which is available on both Android and iOS operating systems. (Third-Party Claims Against Square, Inc., ECF No. 53 ¶¶  10-11).   Once Cash App is downloaded, Square's customer creates a Cash App account and chooses a unique username (known as a "$Cashtag") for the account and then links either their customer's telephone number and/or email address to the Cash App account.  (*Id.* ¶ 17).  However, in order to use most of Cash App's features, such as the ability to send and receive money through Cash App, the customer must link his/her bank account to his/her Cash App account. (*Id.* ¶ 18). Specifically, in order to link the customer's bank account with the customer's Cash App account, the customer is prompted by Cash App to identify his/her banking institution and then to enter his/her online login credentials for the customer's online bank account. (*Id.* ¶ 19).

With a Cash App account, Cash App customers can send and receive money to other Cash App customers. (*Id.* ¶ 22).  To send money, the Cash App customer opens Cash App on the mobile device, enters the amount to send, taps "Pay," and then enters an email address, phone number, or $Cashtag for the recipient, then taps "Pay" again to complete the transfer. (*Id.* ¶ 23).

On or before June 19, 2019, Plaintiff downloaded Square's Cash App application onto Plaintiff's smart phone. (*Id.* ¶ 28).  Also on or before June 19, 2019, Plaintiff became a customer of Square and Cash App by opening a Cash App account. (*Id.* ¶ 29).  Plaintiff also is a customer of Capital One and maintains a checking account at Capital One.  (*Id.* ¶ 30).  Following Plaintiff's opening of a Cash App account, Plaintiff provided Square and Cash App with Plaintiff's credentials to log into and access Plaintiff's online Capital One checking account. (*Id.* ¶ 31).

On June 19, 2019, Plaintiff initiated a transfer of money through Plaintiff's Cash App account. (*Id.* ¶ 33). Plaintiff's transfer was intended by Plaintiff to be delivered to the Cash App account of Plaintiff's friend, Edward Butler ("Butler"). (*Id.* ¶ 34)  Butler is also a Square and Cash App customer and maintains a Cash App account. (*Id.* ¶ 35).   Following Plaintiff's execution of the transfer, Butler received a notification on Butler's mobile device that Butler's Cash App account had received the money from Plaintiff's Cash App account.  (*Id.* ¶ 36).  Butler then reviewed his online bank account but did not locate the deposit by Plaintiff. (*Id.* ¶ 37).  Thereafter, Butler then searched online to troubleshoot the reason why Plaintiff's transfer of money did not deposit into Butler's bank account. (*Id.* ¶ 38).

While searching online through a search engine, Butler located a telephone number that was identified in the search engine's results as a telephone number for Cash App's customer support services. (*Id.* ¶ 39).  Butler then dialed the telephone number he located online and joined Plaintiff into the call. (*Id.* ¶ 40).  A male individual answered the call and identified himself to Plaintiff as a Cash App customer service representative. (*Id.* ¶ 41).  The individual represented to Plaintiff that he could troubleshoot and assist with the money transfer issue and began to ask certain questions of Plaintiff regarding his Cash App account and personal bank accounts. (*Id.* ¶ 42).  In response, Plaintiff provided the individual with information sufficient to enable the individual to

have access to and control over Plaintiff's Cash App account, including Plaintiff providing the individual with Plaintiff's email address, phone number, and Cash App password and/or generated security code. (*Id.* ¶ 43).

During the conversation with the individual, Butler started receiving alerts on his mobile device reflecting that he had requested and received additional transfers even though he did not personally initiate any such transfers. (*Id.* ¶ 45). Butler then became suspicious of the individual on the phone and urged Plaintiff to terminate the telephone call. (*Id.* ¶ 46).

Ultimately, Butler and Plaintiff fell victim to an online phishing and fraud scheme. (*Id.* ¶ 48). The telephone number Butler had located online and dialed was in actuality posted on a fraudulent scam website masquerading as being operated by Square and Cash App. (*Id.* ¶ 49). The individual with whom Plaintiff and Butler spoke on June 19, 2019 was in actuality a fraudster (the "fraudster") who used the conversation to gain information from Plaintiff so that the fraudster could access Plaintiff's Cash App account and therefore enable himself to transfer money out of Plaintiff's linked bank accounts such as Plaintiff's Capital One account. (*Id.* ¶ 50).

On June 20, 2019, Plaintiff disputed with Capital One four (4) outgoing transfers of funds from his Capital One account to a Cash App account. (*Id.* ¶ 53). Plaintiff contended that he did not authorize any of the four outgoing fund transfers from his Capital One account to a Cash App account. (*Id.* ¶ 54). In claim number 190620CL00315 made on June 20, 2019, Plaintiff disputed a single $300.00 June 19, 2019 transfer to "EDWARD" account at Cash App. (*Id.* ¶ 55). In claim number 190620CL00332, made on June 20, 2019, Plaintiff disputed a total of $1,088.00 in transferred funds from three separate transfers, including: a $200.00 June 19, 2019 transfer to "CANDIC" account at Cash App; a $344.00 June 19, 2019 transfer to "EDWARD" account at Cash App; and a $544.00 June 19, 2019 transfer to "EDWARD" account at Cash App. (*Id.* ¶ 56).

In response, Capital One provided provisional credits in connection with both claim numbers and notified Plaintiff in writing of the provisional credits.  (*Id.* ¶¶ 57-60).

In connection with Capital One's investigations into claim numbers 190620CL00332 and 190620CL00315, Capital One communicated with Square as the intermediary payment processor to determine whether the disputed transfers were authorized by Plaintiff. (*Id.* ¶ 61).  Because the transfers were executed on the Cash App software platform, which is owned and controlled by Square, Capital One did not have access to the most pertinent underlying factual information about the transfers to determine whether these were unauthorized transfer, such as:  (1) the mobile electronic device geographic location of the party initiating the transfer; (2) the exact time of the transfers' instructions; (3) the type of mobile electronic device used to initiate the transfers; (4) the IP address of the mobile electronic device executing the transfers; (5) the email address and telephone number of the party executing the transfers; (6) the email address and telephone number of the party receiving the transfers; and (7) the debit card and/or account number of the recipient of the transfers. (*Id.* ¶ 63).  Square had the foregoing information and was in the best position to determine whether the disputed transfers at-issue were unauthorized by Plaintiff or potentially executed by a fraudster. (*Id.* ¶ 64).

By virtue of Square's agreement to participate in and be bound by the Automated Clearing House ("ACH") of the National Automated Clearing House Association ("NACHA") and the corresponding NACHA Rules, Square owes Capital One, as well as other participating ACH financial institutions, a special duty to settle electronic transfers in adherence with NACHA Rules. (*Id.* ¶¶ 66-67).  Among the specific duties under the NACHA Rules, Square warrants, represents, and promises to Capital One with respect to Capital One customer accounts that any transfers initiated by Square's Cash App are properly authorized by the Capital One customer. (*Id.* ¶¶ 69-

5

70).  Further, to the extent any Capital One customer disputes a transaction executed through Square's Cash App, the NACHA Rules obligate Square to investigate the dispute and report the results to Capital One.  (*Id. ¶ 71*).

Ultimately, in response to Capital One's inquiry under NACHA, Square responded in writing to Capital One and indicated that that the $300.00, $344.00, and $544.00 disputed transfers to the "EDWARD" account at Cash App contained no errors and were authorized by Plaintiff. (*Id. ¶ 72*).  In promising, representing, and warranting to Capital One that Plaintiff's disputed transfers contained no errors and were properly authorized by Plaintiff, Square represented to Capital One that Square had conducted a reasonable investigation into Plaintiff's disputes. (*Id. ¶ 73*). In promising, representing, and warranting to Capital One that Plaintiff's disputed transfers contained no errors and were properly authorized by Plaintiff, Square knew or should have known that Capital One was relying on Square's investigations, analyses, conclusions, and representations. (*Id. ¶ 74*).

With respect to disputed $200.00 transfer to the "CANDIC" account at Cash App, Capital One never received a response from Square concerning the dispute, and therefore, Capital One converted the provisional credit to Plaintiff's Capital One checking account into a final and permanent credit. (*Id. ¶ 75*).  In reliance on Square's factual representations to Capital One that the $300.00, $344.00, and $544.00 transfers to the "EDWARD" account at Cash App were authorized by Plaintiff, Capital One denied Plaintiff's claims and reversed the provisional credits to Plaintiff's Capital One checking account. (*Id. ¶ 76*).

Unbeknownst to Capital One, Square misrepresented to Capital One in Square's written communication that Square had conducted a reasonable investigation into Plaintiff's disputes. (*Id. ¶¶ 72, 96*).

On August 16, 2019, Capital One informed Plaintiff of the final outcome and conclusion of Capital One's investigation into Claim number 190620CL00315 by letter. (*Id. ¶* 77). Additionally, on August 27, 2019, Capital One informed Plaintiff of the final outcome and conclusion of Capital One's investigation into Claim number 190620CL00332 by letter. (*Id. ¶* 78).

In commencing this action on June 17, 2020, Plaintiff asserted claims against Capital One under the Electronic Funds Transfer Act, 15 U.S.C. § 1693, *et seq*. ("EFTA") and the Deceptive Acts and Practices Unlawful, NYGBL § 349, *et seq*.  Thereafter, by motion to dismiss, Plaintiff's cause of action under NYGBL § 349 was dismissed with prejudice .  (ECF No. 46).  Plaintiff also brought two claims against Cash App under the EFTA and NYGBL § 349.  However, these claims settled out of court for undisclosed consideration and, now Plaintiff only has only the remaining EFTA cause of action against Capital One.

On October 22, 2021, Capital One filed an Answer to the operative complaint and the Third-Party Complaint as against Square. (ECF No. 53).  Square now seeks dismissal of the Third-Party Complaint under Rule 12(b)(6). (ECF No. 67).

## **ARGUMENT**

Square's Motion to Dismiss the Third-Party Complaint pursuant to Rule 12(b)(6) must be denied because the Third-Party Complaint alleges sufficient facts to state a claim for relief against Square "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"). As explained by courts in this Circuit, "[a] claim is plausible when its factual content 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement[.]'" *Max Impact, LLC v. Sherwood Group, Inc.*, 2012 U.S. Dist. LEXIS 126293 at *6 (S.D.N.Y. Aug. 16, 2012) (quoting *Iqbal*, 556 U.S. at 678); *see also Eternity Global Master Fund Ltd v. Morgan Guaranty Trust Co. of New York*, 375 F.3d 168, 177 (2d Cir. 2004) ("At the pleading stage, then, 'the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'"). A determination of "whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## I.   **CAPITAL ONE HAS PLED A PLAUSIBLE CLAIM FOR BREACH OF WARRANTY**

"A warranty is an assurance by one party to a contract of the existence of a fact upon which another party may rely," and "amounts to a promise to indemnify the promisee for any loss if the fact warranted proves untrue." *In re M/V MSC Flaminia*, 339 F. Supp. 3d 185, 244 (S.D.N.Y. 2018) (quoting *Metro. Coal Co. v. Howard*, 155 F.2d 780, 784 (2d Cir. 1946)). "[T]he right to indemnification depends only on establishing that the warranty was breached." *Promuto v. Waste*

*Mgmt., Inc.*, 44 F. Supp. 2d 628, 644 (S.D.N.Y. 1999) (quoting *CBS v. Ziff-Davis Pub. Co.*, 553 N.E.2d 997, 1001 (N.Y. 1990)).

"The NACHA Rules establish the contractual obligations between the parties to ACH transactions" including rights to indemnification for breach of warranty *See Clinton Plumbing and Heating of Trenton, Inc. v Ciaccio*, CIV. 09-2751, 2010 WL 4224473, at *8-9 (E.D.Pa. 2010).

In its Motion to Dismiss, Square argues that no claim for breach of warranty can lie against Square because Square is not a "member" of NACHA and therefore not bound by NACHA Rules or the provisions governing warranties. (ECF No. 67, at 5–8.)  However, Square cites no authority, nor could it, that membership to NACHA is the sole criteria as to whether a financial institution participating in an ACH transfer is contractually bound by NACHA Rules.

In its pre-motion filing (ECF No. 61), Square conceded that it was a participant in the ACH transfers at-issue, particularly filling the role of  a "Third-Party Sender."  Critical, however, in addition to the NACHA Rules governing members acting as an originating depository financial instruction ("ODFI") or receiving depository financial institution ("RDFI"), NACHA rules also govern parties involved in ACH transactions acting with or on behalf of ODFIs and RDFIs such as Square in its capacity as a Third-Party Sender.

Specifically, a Third-Party Sender is "a type of Third-Party-Service Provider that acts as an intermediary in Transmitting Entries between an Originator and an ODFI," *See* 2019 NACHA Rules § 8.110, and a "Third-Party Service Provider" is "an Organization that performs any functions on behalf of the Originator, the Third-Party Sender, the ODFI, or the RDFI . . . related to the processing of Entries," *Id.* § 8.111. NACHA Rules identify multiple ways that entities other than ODFIs and RDFIs can be bound by NACHA Rules. For example, in order for a Third-Party Sender to work with an ODFI, it must enter into an Origination Agreement containing certain

provisions, including that it "agree to be bound by these Rules," *id.* § 2.2.2.2(b), and "agree not to originate Entries that violate the laws of the United States," *id.* § 2.2.2.2(c). Additionally, "[t]o the extent that a Third-Party Sender performs any of the obligations of an ODFI under these Rules, the Third-Party Sender must perform the requirements of these rules otherwise applicable to the ODFI." NACHA Rules § 2.15.3 (***titled "Performance and Warranty of ODFI Obligations by Third-Party Senders."*** (emphasis added)). Finally, the NACHA Rules also state that a "Third-Party Sender shall be jointly and severally liable with each of its Originators for the retention and delivery to the ODFI or RDFI, as required by these Rules, of any Records, documentation, or data regarding records of authorization of Entries, copies of items, and copies of Eligible Source Documents." *Id.* § 2.15.5.

As alleged in the Third-Party Complaint, by virtue of Square's agreement to participate in and be bound by NACHA Rules, Square owed Capital One a special duty to settle electronic transfers in adherence with the NACHA Rules. (*Id.* ¶¶ 66-67). As further alleged, among the specific duties under the NACHA Rules, Square warranted to Capital One with respect to Capital One customer accounts that any transfers initiated by Cash App were properly authorized by the Capital One customer. (*Id.* ¶¶ 69-70). Further alleged, to the extent any Capital One customer disputes a transaction executed through Square's Cash App, the NACHA Rules obligated Square to investigate the dispute and report the results to Capital One. (*Id.* ¶ 71). Finally, Capital One has alleged that unbeknownst to it, Square misrepresented to Capital One that Square had conducted a reasonable investigation into Plaintiff's disputes. (*Id.* ¶¶ 72, 96).

In light of these allegations, Capital One has plausibly alleged a breach of warranty claim against Square for breach of Square's obligations under the NACHA Rules as either an ODFI or

as a Third-Party Sender.  Accordingly, the Motion to Dismiss as to breach of warranty should be denied.

## II.   CAPITAL ONE HAS PLED A VALID CLAIM FOR NEGLIGENT MISREPRESENTATION

In order to sufficiently plead a claim for negligent misrepresentation, a plaintiff is required to demonstrate "(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information." *Marc J. Bern & Partners LLP v. U.S. Legal Support, Inc.*, No. 17 Civ. 6771 (ER), 2018 WL 2943784, at *6 (S.D.N.Y. June 11, 2018) (citing *J.A.O. Acquisition Corp. v. Stavitsky*, 8 N.Y.3d 144, 148 (2007)).  Because negligent misrepresentation is sounded in fraud, it is subject to Rule 9(b)'s heightened pleading standard, which states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b); *see Yoomi Babytech, Inc. v. Anvyl, Inc.*, No. 20 Civ. 7933 (ER), 2021 WL 4332258 , at *12 (S.D.N.Y. Sept. 22, 2021).

In the present case, Capital One has sufficiently pled a claim of negligent misrepresentation and easily met the heightened pleading standard.  The Third-Party Complaint alleges that Capital One and Square both agreed to abide by the NACHA Rules, which gives rise to a special relationship between them approaching privity. (ECF No. 53 ¶ 92).  Capital One further alleged that Square misrepresented to Capital One in Square's written communication that Square had conducted a reasonable investigation into Plaintiff's disputes and that Capital One relied upon these misrepresentations when it denied Plaintiff's disputers for credits to his account. (*Id.* ¶¶ 72, 77-78, 96).  These allegations easily meet the heightened pleadings of Rule 9(b) as Capital One

has specifically alleged the factual circumstances pertaining to Square's negligent misrepresentation.

**A.   Capital One Has Alleged Facts Showing that Square and Capital One were in Privity**

Square claims that the Third-Party Complaint fails to establish a special relationship between Square and Capital One.  "A special relationship may be established by 'persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified.'" *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1109 (N.Y. 2011) (quoting *Kimmell v. Schaefer*, 675 N.E.2d 450, 454 (N.Y. 1996)). "Factors bearing on this inquiry include 'whether the person making the representation held or appeared to hold unique or special expertise; whether a special relationship of trust or confidence existed between the parties; and whether the speaker was aware of the use to which the information would be put and supplied it for that purpose.'" *Marc J. Bern & Partners LLP*, 2018 WL 2943784 at *6 (quoting *Kimmell*, 675 N.E.2d at 454).

In the Third-Party Complaint, Capital alleges that it "and Square are and, at all relevant times, were members of NACHA and agreed to abide by the NACHA Rules, which gives rise to a special relationship between them approaching privity." (ECF No. 53 ¶ 92).  Capital One further alleges that Square, as the party making the representation, held unique and special expertise into the transfers conducted via Cash App.  Specifically, Capital One alleged that "the transfers were executed on the Cash App software platform, which is owned and controlled by Square," and as a result, "Capital One did not have access to the most pertinent underlying factual information about the transfers to determine whether there was unauthorized transfer."  (*Id.* ¶ 63).

The Third-Party Complaint also alleges that Square has a "duty to Capital One to comply with NACHA Rules and practices to reasonably investigate" the disputed transactions and to report

to Capital One the results of Square's investigations," which amounts to a special relationship of confidence between Capital One and Square  (*Id.* ¶ 71).  Most importantly, "Square knew or should have known that Capital One was relying on Square's investigations, analyses, conclusions, and representations." (*Id.* ¶ 74).  Accordingly, Capital One has sufficiently alleged facts showing that Capital One and Square had a special or privity-relationship via their participation in ACH transfers under the NACHA Rules.

      **B.**      **Capital One Has Alleged Facts that Square Was Negligent**

Square incorrectly asserts that the Third-Party Complaint should be dismissed because Capital One fails to allege that Square's conduct was negligent.  To the contrary, among other negligent acts alleged in the Third-Party Complaint, Capital One specifically alleged that Square failed to communicate with both Plaintiff and Butler in connection with any good faith and bona fide investigation into their disputes.  (*Id.* ¶ 86, 96).

Accordingly, Capital One has plausibly alleged a claim for negligent misrepresentation. As such, the Motion to Dismiss should be denied.

**III.**      **CAPITAL ONE HAS PLED A VALID CLAIM FOR PROMISSORY ESTOPPEL**

"A plaintiff must satisfy four elements to succeed on a promissory-estoppel claim: '(1) a promise, (2) reliance on the promise, (3) injury caused by the reliance, and (4) an injustice if the promise is not enforced.'" *NTT American Inc. v. Tennessee Data Systems, LLC*, No. 17-CV-08274 (AT)(SN), 2018 WL 5493088, at *4 (S.D.N.Y. Oct. 11, 2018) (quoting *Weinreb v. Hosp. For Joint Diseases Orthopedic Inst.*, 404 F.3d 167, 172 (2d Cir. 2005)).

Square argues in its Motion to Dismiss that the Third-Party Complaint contains no allegations concerning either the disputed transactions or Square's investigation.  This is incorrect. The Third-Party Complaint alleges that Square "responded in writing to Capital One's inquiry and

indicated that [several] of the disputed transfers . . . at Cash App contained no errors and were authorized by Plaintiff." (ECF No. 53 ¶ 72.)   The Third-Party Complaint also alleges that, "[i]n promising, representing, and warranting to Capital One that Plaintiff's disputed transfers contained no errors and were properly authorized by Plaintiff, Square represented to Capital One that Square had conducted a reasonable investigation in Plaintiff's disputes" and that "Square knew or should have known that Capital One was relying on Square's investigations, analyses, conclusions, and representations."  (*Id.* ¶ 73 & 74).  The Third-Party Complaint further alleges that, "[i]n reliance on Square's factual representations to Capital One that the $300.00, $344.00, and $544.00 transfers to the 'EDWARD' account at Cash App were authorized by Plaintiff, Capital One denied Plaintiff's claims and reversed the provisional credits to Plaintiff's Capital One checking account." (*Id.* ¶ 76).

    In this action, Plaintiff seeks to hold Capital One liable for denying Plaintiff's disputes and reversing the provisional credits.  To the extent that Plaintiff is able to establish Capital One's liability, it would be an injustice for Capital One to be held solely liable for Plaintiff's damages which were caused entirely by Square's software platform and Square's inadequate investigation into Plaintiff's disputes.

    Indeed, "[b]ecause the transfers were executed on the Cash App software platform, which is owned and controlled by Square, Capital One did not have access to the most pertinent underlying factual information about the transfers to determine whether there was unauthorized transfer."  (*Id.* ¶ 63).  For example, Square was the only entity that had access to the mobile electronic device location of the party initiating the transfer; the exact time of the transfers' instructions; the type of mobile electronic device used to initiate the transfers; the IP address of the mobile electronic device executing the transfers; the email address and telephone number of

the party executing the transfers and the email address and telephone number of the party receiving the transfers; and the debit card and/or account number of the recipient of the transfers.  (*Id.*) Capital One was forced to rely on Square's conclusions and representations, and it will suffer an injustice if Square is not held liable.

Finally, Square argues that promissory estoppel is a "narrow doctrine" that only applies "where some contract formation problem would otherwise prevent enforcement[.]"  (ECF No. 67 at 10 (citing *BNP Paribas Mortg. Corp v. Bank of Amer., N.A.*, 949 F.Supp.2d 486, 516 (S.D.N.Y. 2013)).  Contrary to Square's arguments, *BNP* does not require that a plaintiff allege that a contract formation problem existed.  "In  New York, promissory estoppel has three elements: (1) an unambiguous promise; (2) reasonable and foreseeable reliance on the promise; and (3) injury as a result of the reliance."  *Pearce v. Manhattan Ensemble Theater, Inc.*, 528 F.Supp.2d 175, 181 (S.D.N.Y. 2007) (quoting *Kaye v. Grossman*, 202 F.3d 611, 615 (2d Cir.2000)).

For these reasons, Capital One has pleaded a plausible claim for promissory estoppel. Accordingly, the Motion to Dismiss as to Count III should be denied.

## IV.   CAPITAL ONE HAS PLED A VALID CLAIM FOR CONTRIBUTION AND INDEMNIFICATION

The Motion to Dismiss should be denied as to Count IV because Capital One has pled a plausible claim for contribution and indemnification.

Square argues that there is no claim in contribution unless the operative federal statute provides one. (ECF No. 67 at 11 (citing *In re Bernanrd L Madoff Inv. Sec. LLC*, 721 F.3d 54,65 (2d Cir. 2013)).  While the EFTA does not specifically provide a framework for contribution, it also does not specifically preclude such a claim under the statutory scheme.  *See* 15 U.S.C. § 1693, *et seq*.

Under established New York common law, the "right to contribution and apportionment of liability among alleged multiple wrongdoers arises when they each owe a duty to plaintiff or to each other and by breaching their respective duties they contribute to plaintiff's ultimate injuries. This is so regardless of whether the parties are joint tort-feasors, or whether they are liable under different theories, so long as their wrongdoing contributes to the damage or injury involved." *Graham-Johnson v City of Albany*, 119CV01274BKSCFH, 2021 WL 1614763, at *5 (N.D.N.Y. Apr. 26, 2021) quoting *Trustees of Columbia Univ. v. Mitchell/Giurgola Assocs.*, 109 A.D.2d 449, 454, 492 N.Y.S.2d 371 (1st Dep't 1985).

As alleged in the Third-Party Complaint, the NACHA Rules impose banking industry standards for the performance of electronic fund transfers such as ACH transfers. *See* Third-Party Compl., *generally*. To this end, Square owed Capital One a duty to adhere to the standards of the NACHA Rules irrespective of whether Square was a DFI or Third-Party Sender. *See e.g.,* NACHA Rules (2021) § 2.15.3. Accordingly, to the extent it is established after discovery that Square violated the NACHA Rules in its warranties and representations to Capital One, which ultimately contributed to Plaintiff's damages under the EFTA, Capital One would be entitled to common law contribution from Square as any other result would be inequitable and unjust.

Other jurisdictions have found that third-party plaintiffs may be entitled to full or partial indemnification for any amount for which the third-party plaintiff is found liable to plaintiffs arising from EFTA claims where the third-party plaintiff relied on representations from the third party defendant. For example, in *Vigneri v. U.S. Bank National Association*, the district court allowed U.S. Bank to advance a third-party complaint against Nationwide Credit, Inc. No. 8:05-CV-68, *3 2005 WL 2180346 (D. Neb. Sept. 5, 2005). In particular, Nationwide made representations and provided documents to U.S. Bank purporting to authorize U.S. Bank to

withdraw funds from the plaintiff's bank account.  *Id.* at *1. U.S. Bank withdrew the funds as instructed by Nationwide, and Plaintiff sued U.S. Bank as a result.  *Id.* The district court found that indemnity is available "when one party is compelled to pay money which in justice another ought to pay, or has agreed to pay[.]" *Vigneri*, 2005 WL 2180346 at *3 (quoting *Sec. First Bank v. Burlington N. & Santa Fe Ry. Co.*, 213 F. Supp. 2d 1087, 1094 (D. Neb. 2002)).

Accordingly, Capital One has pleaded a plausible claim to common law indemnification and contribution from Square.  For these reasons, Square's Motion to Dismiss should be denied as to Count IV.

## CONCLUSION

For the foregoing reasons, Defendant/Third-Party Plaintiff Capital One, N.A. respectfully requests that the Court deny the Motion to Dismiss [ECF No. 67] filed by Third-Party Defendant, Square, Inc.

Dated:  New York, New York
   March 4, 2022

Respectfully submitted

**TROUTMAN PEPPER HAMILTON
SANDERS LLP**

By:   /s/ Stephen J. Steinlight
   Stephen J. Steinlight
   875 Third Avenue
   New York, New York 10022
   Telephone: (212) 704-6000
   Facsimile: (212) 704-6288
   stephen.steinlight@troutman.com

Jon S. Hubbard (VSB No. 71089)
(admitted *pro hac vice*)
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-1407
Facsimile:  (804) 697-1339
jon.hubbard@troutman.com

*Attorneys for Defendant and Third-Party
Plaintiff, Capital One, N.A.*

## **CERTIFICATE OF SERVICE**

I undersigned certifies that the foregoing was served by ECF filing on March 4, 2022, on:

Evan S. Rothfarb, Esq.
Schlander Law Group LLP
80 Broad Street, Suite 1301
New York, New York 10004
erothfarb@consumerprotection.net
*Counsel for Plaintiff, Gerald Green*

Isaac B. Zaur, Esq.
220 Fifth Avenue, 14th Floor
New York, New York 10001
izaur@cgr-law.com
*Counsel for Third-Party Defendant, Square, Inc.*

By:_____/s/ Stephen J. Steinlight

     Stephen J. Steinlight
     **Troutman Pepper Hamilton Sanders LLP**
     875 Third Avenue
     New York, NY 10022
     Telephone:(212) 704-6000
     Facsimile: (212) 704-6288
     stephen.steinlight@troutman.com

     *Attorneys for Defendant and Third-Party Plaintiff,*
     *Capital One,*